Filed 11/22/13  F.B. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| F.B.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF RIVERSIDE COUNTY,<br><br>        Respondent;<br><br>RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>        Real Party in Interest. | E059604<br><br>(Super.Ct.No. RIJ103239)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Tamara Wagner, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Petition Denied.

David A. Goldstein for Petitioner.

No appearance for Respondent.

Pamela J. Walls, County Counsel, and Carole A. Nunes Fong, Deputy County Counsel, for Real Party in Interest.

1

Petitioner F.B. (Father) seeks extraordinary writ review pursuant to California Rules of Court, rule 8.452 of the juvenile court's September 9, 2013 dispositional orders denying him reunification services and setting a Welfare and Institutions Code[1] section 366.26 permanency hearing as to his four-month-old son, R.B.[2]  Father argues that there was insufficient evidence to support the juvenile court's order denying him services pursuant to the bypass provisions of section 361.5.  We find no error and deny the petition.

I

FACTUAL AND PROCEDURAL BACKGROUND

The child came to the attention of the Riverside County Department of Public Social Services (DPSS) following his birth in July 2013, due to the parents' extensive history of abusing methamphetamine, history with DPSS, acts of engaging in domestic violence, and criminal history.  Although Mother's toxicology was negative at birth, the child was a poor feeder, jittery, woke up frequently, and made sounds every 20 minutes.  The child was in the Neonatal Intensive Care Unit (NICU) and on antibiotics.  The child's NICU nurse indicated that these symptoms could qualify as symptoms of a drug exposed baby.  Mother admitted that she had used methamphetamine until May 2013.

---

[1]  All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]  The child's mother, H.B. (Mother), is not a party to this appeal.

The parents were homeless and living in a shelter. They confirmed that they had a history of abusing methamphetamine, a history with DPSS, and a history of domestic violence. Father's involvement with DPSS began in 2001 when a section 300 petition was filed on behalf of his children, J.B. and A.M.B., (the child's half siblings) due to Father being incarcerated for domestic violence and the children's mother abusing methamphetamine, not feeding the children, and leaving the children alone or in the care of strangers. The parents were provided with family reunification services, and the children were returned to their mother when she completed her case plan.

In 2007, a new section 300 petition was filed as to J.B. and A.M.B. During the investigation it was discovered that Father's then nine-year-old son was self-inflicting injuries, and that Father and the mother had an extensive history with substance abuse and domestic violence. Family reunification services were provided to Father and the mother. Reunification services were terminated at the 12-month review hearing and legal guardianship was established for the child's half siblings at the section 366.26 hearing.

In March 2012, a section 300 petition was filed on behalf of the child's older siblings, A.B. and E.B., due to Mother being arrested for being under the influence of a controlled substance while attending a family law mediation hearing and Father's history of abusing drugs and domestic violence.[3] Family reunification services were denied to

---

[3] Mother had three children from two previous relationships as well. Those children were declared dependents of the court in 2002. Following failed attempts at reunification services, Mother's parental rights as to one child was terminated and he was adopted by a relative; the other two children were returned to their father's care after the court granted the father's section 388 petition.

Father and Mother pursuant to section 361.5, subdivision (b)(10), and their parental rights as to A.B. and E.B. were subsequently terminated.

Father also had a criminal history. He was convicted in February 2012 of inflicting corporal injury on Mother and was on probation until February 2015. He was also convicted of being under the influence of a controlled substance in 2007, possession of controlled substances in 2006, and inflicting corporal injury on a spouse in 2000.

On July 23, 2013, a petition was filed on behalf of the child pursuant to section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling). At the detention hearing the following day, the child was formally removed from his parents and placed in a suitable placement. The court ordered services and visitations to the parents pending the jurisdictional/dispositional hearing.

In a jurisdictional/dispositional report filed August 9, 2013, the social worker recommended the allegations in the petition be found true; that the parents be denied services pursuant to section 361.5, subdivision (b)(10) and (b)(11); and that a section 366.26 hearing be set.[4] The social worker noted that the parents lived a transient lifestyle; that they had no viable means to support themselves; and that they had failed to benefit from previous services offered to them by DPSS. Father began using drugs at the age of 11 and was 47 years old at the time of the report. He reported that he had attended MFI Recovery Center on three different occasions and he had completed the program in

---

[4] Father and Mother refused to be interviewed for the jurisdictional/dispositional report.

July 2012. A certificate of achievement from MFI Recovery Center noted that Father had completed eight anger management classes and six weeks of parenting classes on July 25, 2012. A letter from MFI stated that Father had completed a 45-day residential substance abuse program on July 31, 2012. In April 2012, Father had stated that he had used methamphetamine on and off for 20 years; in July 2012, Father claimed that he had been sober for one year. When the child was detained, Father tested negative for drugs.

In July and August 2013, the social worker gave the parents referrals for counseling, parenting classes, substance abuse programs, and for random drug testing. The social worker also discussed with the parents the available services and the referrals made on their behalf. In addition, the social worker informed the parents that a denial of services would be recommended.

On August 22, 2013, the social worker inquired whether the parents had initiated any services. The parents reported that they did not have health insurance. The social worker explained to the parents that they are entitled to these services despite not having any health insurance and that the services are available to them; the parents however appeared despondent regarding the matter and Mother was in the process of filing for divorce from Father. As of September 3, 2013, the parents had not accessed any services to address the problems that led to the dependency; they had however consistently visited the child and were appropriate during the visits.

A letter in support of the parents from a resident service staff member from Path of Life Ministries (Path of Life) noted that the parents had been involved with Path of Life for five years. The parents had been residents at the Path of Life homeless shelter

5

since May 17, 2013. In order to be a resident of the shelter, a person is required to be clean and sober. Father and Mother had tested negative prior to being accepted into the shelter in May 2013. As of August 27, 2013, the parents were not residents of the shelter, and appeared to be homeless.

The contested jurisdictional/dispositional hearing was held on September 9, 2013. At that time, Father was present but Mother was not. Father testified as to the programs he had attempted in the past and the current programs he was attending. He also stated that he was currently residing in a sober living home; that he had gained employment at a warehouse; that he had maintained visitation with the child; and that he had been accepted to the Path of Life long-term housing program. Following testimony from Father and the social worker and argument from counsel, the juvenile court found the allegations in the petition true and declared the child a dependent of the court. The court also denied services to the parents pursuant to section 361.5, subdivision (b)(10) and (b)(11), and set a section 366.26 selection and implementation hearing.

II

DISCUSSION

Father contends that the juvenile court erred in denying him services under section 361.5, subdivision (b)(10) and (b)(11), because he made reasonable efforts to resolve his drug abuse. We disagree.

"We affirm an order denying reunification services if the order is supported by substantial evidence. [Citation.]" (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 839; see also *Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 971.) In applying the

6

substantial evidence test, we presume the court made the proper order and consider the evidence in the light most favorable to the ruling. (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880.) We do not "resolve conflicts in the evidence, pass on the credibility of the witnesses, or determine where the preponderance of the evidence lies. [We merely determine whether] there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact." (*In re Walter E.* (1992) 13 Cal.App.4th 125, 139–140.)

The juvenile court is required to order family reunification services whenever a child is removed from the custody of his or her parent unless the court finds by clear and convincing evidence one of the exceptions set forth in section 361.5, subdivision (b), applies. Section 361.5, subdivision (b), permits the juvenile court to bypass services to parents whose circumstances demonstrate that provision of services would be futile and only would delay permanence and stability for a child who was removed from the parent. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744; *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478.)

Specifically, section 361.5, subdivision (b)(10), provides that a court may deny services if there is clear and convincing evidence: "That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent . . . and that, according to the findings of the court, this parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent . . . ."

7

Subdivision (b)(11) of section 361.5, provides that a court may deny services if there is clear and convincing evidence: "That the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and this parent is the same parent . . . and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent."[5]

Overwhelming evidence supported the juvenile court's findings under section 361.5, subdivision (b)(10) and (b)(11). It was undisputed that reunification services, as well as parental rights, had been terminated with respect to the child's siblings and half siblings. As set forth above, services were terminated with respect to the child's half siblings, J.B. and A.M.B., and Father's parental rights were terminated as to the child's siblings, A.B. and E.B. Indeed, Father does not dispute the first prong of either subdivision (b)(10) or (11) of section 361.5 has been satisfied.

Rather, Father contends the juvenile court erred in not concluding his successful participation in services subsequent to the child's detention supported a finding he made reasonable efforts to address his drug abuse and domestic violence. We disagree. While every effort should be made to save a parent's relationship with a child despite the

---

[5] Even if the court finds section 361.5, subdivision (b)(10) or (11) applies, it has discretion to order reunification services if it determines, by clear and convincing evidence, that reunification is in the child's best interest. (§ 361.5, subd. (c).) Father does not appear to contend the juvenile court abused its discretion by failing to order reunification services notwithstanding the applicability of section 361.5, subdivision (b)(10) and (11).

parent's history of substantial misconduct (*Renee J. v. Superior Court*, *supra*, 96 Cal.App.4th at p. 1464), the "no-reasonable effort" clause was not intended to provide a parent such as Father another opportunity to address an underlying problem when he had many opportunities and failed to do so. (*In re Harmony B.*, *supra*, 125 Cal.App.4th at p. 843.) Instead, it was intended to mitigate an otherwise harsh result in the case of a parent who, having failed to reunify, subsequently worked toward correcting the underlying problem. (*Id.* at p. 842.)

In this case, Father had the opportunity after the removal of the child's half siblings in 2001, and again after the removal of the child's older siblings in 2012, to benefit from services provided to him and discontinue his use of drugs. Although Father had made efforts to combat his 35-year drug addiction by entering residential substance abuse treatment programs, the efforts were inadequate as evidenced by his third participation at the MFI substance abuse program and continual involvement with active substance abusers, such as Mother. Despite losing his chance to reunify with the child's half siblings and ultimately losing his parental rights as to the child's siblings, Father continued to use methamphetamine on and off, failed to adequately address his 11 years of domestic violence issues, and live a transient lifestyle. Those facts support the juvenile court's finding that Father failed to make subsequent reasonable efforts to resolve his drug abuse and domestic violence issues and its order denying him reunification services under section 361.5, subdivision (b)(10) and (b)(11).

### III

### DISPOSITION

The petition for extraordinary writ is denied.

NOT TO BE PUBLISHED IN OFFICAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

McKINSTER
J.